Filed 9/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of C.D. and G.D. | 2d Civil No. B323428 (Super. Ct. No. D388847) (Ventura County) |
| C.D., <br><br>   Appellant, <br><br> v. <br><br> G.D., <br><br>   Respondent. | |

      A parent with "sole legal custody" of a child has "the right and . . . responsibility to make . . . decisions relating to the health, education, and welfare of [that] child." (Fam. Code,[1] § 3006.) A noncustodial parent has none of these rights. To acquire them, the noncustodial parent must obtain custody. To do that, the noncustodial parent must demonstrate a significant change in circumstances warranting a new custody arrangement that is in the child's best interest.

---

      [1] Unlabeled statutory references are to the Family Code.

C.D. (Mother) appeals from the trial court's postjudgment order granting a request from G.D. (Father) that she enroll their minor daughters in public school. Mother contends the order must be vacated because, without a change in custody, Father has no decision-making authority regarding their daughters' education. We agree, and vacate the order.

FACTUAL AND PROCEDURAL HISTORY

Mother and Father married in 2013. Their twin daughters, F.D. and S.D., were born four years later. Soon thereafter, Mother petitioned to dissolve the marriage. The trial court approved the dissolution petition and, after finding that Father had sexually abused F.D. and S.D., granted Mother sole legal custody. The court also barred Father from visiting his daughters, but did not terminate his parental rights. We affirmed the judgment on appeal. (See *In re Marriage of C.D. and G.D.* (Sept. 11, 2023, B318718) __ Cal.App.5th __ [p. 12].)

While that appeal was pending, Father requested that the trial court order Mother to enroll F.D. and S.D. in public school for the 2022-2023 school year. He argued Mother had not provided their daughters with a formal education and that she was not competent to teach them. He also alleged Mother was isolating the girls and limiting their abilities to socialize with their peers.

Mother responded that, absent a change to the trial court's order awarding her sole legal custody, Father had no right to dictate how she educated their daughters. She also informed the court that her daughters were enrolled in an online homeschooling program and had active social lives.

The attempt to mediate the matter was unsuccessful. At a subsequent hearing, Mother testified that her daughters were

2

enrolled in an online kindergarten program. She picked the program because she would not have to teach F.D. and S.D. herself; the program had instructors who videotaped lessons for the girls. Her niece thrived when she participated in the program during the 2021-2022 school year.

F.D. and S.D. were in class from 8:00 a.m. to 2:00 p.m., and had homework afterward. Mother helped the girls with their assigned projects, and monitored their activities to ensure they complied with all school requirements. The girls were excited about the program, and looked forward to their lessons each day.

Regarding socialization, Mother said F.D. and S.D. enjoy meeting people and playing with their friends. They have karate classes two days a week, play at a local park at least twice a week, and attend Sunday school weekly. They regularly see cousins who live nearby, and have frequent weekend playdates. They also attend social events with other homeschooled children.

Father testified that he is a state-certified high school teacher and would be better equipped than Mother to decide matters regarding their daughters' education. He was concerned Mother was isolating F.D. and S.D. from the outside world. He believed in-person school would be in the girls' best interests because it would enable them to interact with other children and receive assistance from teachers. He also believed that video-based instruction had negative impacts on children.

The mediator testified as an expert on mediation and family custody issues. She opined that in-person school was in F.D.'s and S.D.'s best interests. Mother may not be qualified to teach her daughters. The girls should spend less time with Mother and more time with other adults. Professionals who regularly saw the girls in an educational setting could help

evaluate whether their behaviors were concerning. Video-based education without interaction with an instructor could not replicate this evaluation.

The trial court agreed with the mediator's recommendation and granted Father's request for an order directing Mother to enroll F.D. and S.D. in public school. Mother appealed and filed a petition for writ of supersedeas. We issued the writ, and stayed the trial court's order pending resolution of the appeal.

DISCUSSION

Mother contends the trial court abused its direction when it granted Father's request for an order directing her to enroll F.D. and S.D. in public school because, absent a change in custody, he has no decision-making authority regarding their daughters' education. (Cf. *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [custody and visitation orders reviewed for abuse of discretion].) We agree because, notwithstanding the evidence adduced at the hearing on his request, Father has not shown a significant change in circumstances warranting a change to the existing custody order.

A parent with "sole legal custody" has "the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (§ 3006.) "Joint legal custody," in contrast, means that both parents share those rights and responsibilities. (§ 3003.) Here, Father requested a say in his daughters' education by asking the trial court to order Mother to enroll them in public school. But because Mother has sole legal custody of the girls, Father has no right or responsibility concerning their education. To obtain those, Father had to secure joint legal custody by showing a significant change in circumstances. (See *Burchard v. Garay* (1986) 42 Cal.3d 531, 535

4

[once initial custody order is in place, court must "preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest"].)

The Supreme Court's decision in *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947 (*Brown*), supports our conclusion. In that case, a mother had sole legal custody of her son. (*Id.* at p. 953.) When she sought to move her son to Nevada, the son's father opposed the move. (*Ibid.*) The mother argued the father's opposition was irrelevant; as the parent with sole legal custody, she had the right to "make all decisions regarding [her son's] residence and schooling . . . without interference from [his father]." (*Id.* at p. 956.) Our Supreme Court disagreed. It concluded that the father could potentially block the move if he were to "seek and obtain a custody modification based on a proper showing pursuant to the changed circumstance[s] rule." (*Id.* at p. 959.)

*Brown, supra*, 37 Cal.4th 947, stands in contrast to *In re Marriage of Furie* (2017) 16 Cal.App.5th 816 (*Furie*) and *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371 (*Enrique M.*), cases on which Father relies. In *Furie*, the parents stipulated that they would share joint legal custody of their children. (*Furie*, at p. 820.) The trial court later granted the mother's request to have sole decision-making authority over the children's orthodontic care. (*Id.* at pp. 820, 823-824.) Our colleagues in Division 1 upheld the orthodontic order under the "best interest of the child" standard, explaining that the mother did not need to show a significant change of circumstances to obtain it since the order did not "rise to the level of a change in legal custody" (*id.* at

5

p. 827); the father "continue[d] to share joint legal custody with [her]" (*id.* at p. 826).

The parents in *Enrique M.* similarly shared joint legal custody of their son. (*Enrique M.*, *supra*, 121 Cal.App.4th at p. 1375.) After the father moved, he sought to have his son either change school schedules or enroll in a new school. (*Id.* at p. 1376.) The trial court denied the father's request, applying the changed circumstances rule. (*Ibid.*) The Fourth District reversed, concluding that the request was not to change the joint custody agreement between the parents but was rather more akin to a change in visitation. (*Id.* at p. 1382.) The changed circumstances rule did not apply. (*Ibid.*)

Unlike the mother in *Furie*, *supra*, 16 Cal.App.5th 816, and the father in *Enrique M.*, *supra*, 121 Cal.App.4th 1371, Father does not share joint legal custody of F.D. and S.D. Thus, unlike those parents, Father has no direct say in the decisions regarding the health, education, and welfare of his children. To have such a say, Father must acquire joint legal custody. That, in turn, requires him to demonstrate a significant change of circumstances showing that a new custody arrangement would be in his daughters' best interests.

Father did not do so. At the hearing on his request for an order directing Mother to send F.D. and S.D. to public school, Father testified that he believed in-person school would be in his daughters' best interests. The mediator echoed that belief. But the best interest test does not apply here; the changed circumstances test does. And Father concedes he has not satisfied it. Nor can we read the trial court's order granting Father's request as impliedly finding that he did; the court did not issue an order awarding joint custody, an order for which

6

satisfaction of the changed circumstances test was a prerequisite. (See § 3083 [detailing requirements of joint custody order].)

We thus conclude that the trial court erred when it granted Father's request for an order directing Mother to send their daughters to public school. Prior to issuing such an order, the court was required to find that Father demonstrated a change in circumstances warranting modification of its initial custody order. Not making that finding was an abuse of discretion. (*In re Marriage of McKean* (2019) 41 Cal.App.5th 1083, 1089 [misapplying the law is an abuse of discretion].) Reversal is required. (*Enrique M.*, *supra*, 121 Cal.App.4th at p. 1382 [reversal required where court applies wrong test].)

## DISPOSITION

The postjudgment order granting G.D.'s request for an order directing C.D. to enroll F.D. and S.D. in public school, entered September 7, 2022, is vacated. The trial court is directed to enter a new and different order denying G.D.'s request. The stay issued by this court on October 26, 2022, shall dissolve automatically upon issuance of the remittitur. C.D. shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION.


BALTODANO, J.


I concur:



GILBERT, P. J.


7

YEGAN, J., Concurring:

I concur in the result only. Family Code section 3006 could not be written in any plainer language. A parent who has no legal custody has no standing to request an order regarding the education of children. A choice of where a child is to be educated rests in the sole discretion of the custodial parent. It matters not what a mediator, or a superior court judge, or an appellate court justice, thinks is a better choice.[2] Rather than conduct a hearing on what was best for the children's education, the trial court should have summarily denied the instant request. That should have been the beginning and end of this dispute.

The majority opinion's discussion of the tendered issues on the merits may send an erroneous message to the litigants, the trial court, and the family law bar. We should exercise restraint. This case has nothing to do with the abuse of discretion rules or "move-away" jurisprudence. The majority opinion may be interpreted as encouraging a noncustodial parent to litigate issues that are foreclosed by statute. At no time in the briefing or at oral argument has appellant sought a change of custodial status. When asked at oral argument if he was seeking a change of legal custody, appellant said, "no." This is fatal to his defense of the trial court's order.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

---

[2] Parenthetically, I agree with father, the mediator, and the trial court. But, as indicated, my views are not relevant.

Rocky J. Baio, Judge

Superior Court County of Ventura

_____

Law Offices of Jeffrey A. Slott, Jeffrey A. Slott; The Law Office of Greg May and Greg May for Appellant.

Taylor, McCord, Praver & Cherry, Patrick G. Cherry; Ventura Coast Law and Douglas K. Goldwater for Respondent.